875 F.2d 865
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Brian D. MASSEY, a minor through his Guardian and
Conservator, Roy O. Yackle, Sr., and Roy O. Yackle, Sr., as
Administrator of the Estates of Jean Ann Young Andrews,
Tamara J. Massey and Tiffany D. Massey, Plaintiffs-Appellants,
v.
William F. GRANT, Superintendent of Camp Lehman, Billie J.
Turner, Personal Representative of the Estate of Edward
Turner, Former Chairman of the Michigan Parole Board, Kay
Zeitz, Records Supervisor for the Michigan Department of
Corrections, Howard Grossman, Former Member of Michigan
Parole Board, Richard Walbrecq, William Hudson, Jacqueline
Moss, Sandra Johnson, and Gloria Richardson all present
members of the Michigan Parole Board, and Kennedy Lampar,
Defendants-Appellees.
 No. 88-1437.
 United States Court of Appeals, Sixth Circuit.
 April 12, 1989.
 
 Before WELLFORD, and ALAN E. NORRIS, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 EDWARDS, Senior Circuit Judge.
 
 
 1
 The plaintiffs appeal from an order dismissing their complaint under 42 U.S.C. Sec. 1983.
 
 
 2
 This case presents a claim that plaintiff-appellant, Brian D. Massey, a minor, suffered injuries inflicted by one David Andrews, after Andrews had escaped from a Michigan Department of Corrections Prison Camp. Massey seeks recovery for his injuries from the Superintendent of the Michigan Prison Camp, the estate of the former Chairman of the Michigan Parole Board, members of the Michigan Parole Board and employees of the Michigan Department of Corrections. This record also shows that on October 31, 1984, after his escape, Andrews killed Jean Ann Young Andrews and her two daughters, and that he also abducted and sexually abused her son, Brian, before finally being apprehended in Port Huron, Michigan on November 2, 1984.
 
 
 3
 There is no doubt that the plaintiffs in this case suffered grave damages as the result of Andrews' actions. There is great doubt, however, that the state officers or their personal representatives who are named as defendants herein can be held liable for Andrews' depredations.
 
 
 4
 The District Court dismissed plaintiffs' case, holding that Massey had failed to state a claim for violation of any duty owed by the defendants. Judge Bell held that the public duties relied on by plaintiffs, of insuring a safe and secure prison and carrying out duties under the extradition statute, did not state a cause of action under which plaintiffs could prevail.
 
 
 5
 Under Michigan law, which applies in this case, an individual may recover for a breach of a private duty owed to him but not for a breach of duty owed to the public. Hobrla v. Glass, 372 N.W.2d 630 (Mich.Ct.App.1985). A public duty is owed to a specific individual only if the performance of its affects the individual in a manner different from the way it affects the public at large. Gerneth v. City of Detroit, 465 F.2d 784, 787 (6th Cir.1972). The statutes relied on by plaintiffs in this case create only public duties, not private ones.
 
 
 6
 Plaintiffs contend defendants owe them a different duty than that owed to the public generally. Because defendants knew of Andrews' prior criminal sexually assaultive history and the special relationship he had with Jean Ann and her children, defendants are alleged to have owed plaintiffs the duty to protect them from, or warn them of, his dangerous propensities.
 
 
 7
 Under Michigan law, absent a special relationship, a person owes no duty to protect another from a third person. Jackson v. New Center Mental Health Services, 404 N.W.2d 688 (Mich.Ct.App.1987); Hinkelman v. Borgess Medical Center, 403 N.W.2d 547 (Mich.Ct.App.1987). Plaintiffs allege that they were in a special relationship with David Andrews, presumably because of his marriage to Jean Ann. This relationship cannot form the basis for imposition of a duty upon defendants.
 
 
 8
 In Duvall v. Goldin, 362 N.W.2d 275, 278 (Mich.Ct.App.1984), the court held that a legal duty arises only where the actor stands in a special relationship with either the third-party victim or the person causing the injury. This record does not provide evidence of such a relationship.
 
 
 9
 The only possible special relationship alleged would be between defendants and Andrews. This relationship arose from Andrews' incarceration in a Michigan prison. Assuming this constituted a special relationship, the duty of reasonable care may be limited to the class of persons who are "readily identifiable as foreseeably endangered." Sellers v. United States, No. 88-1179 --- F.2d ---- (6th Cir.1989) (quoting Davis v. Lihm, 335 N.W.2d 481, 489 (Mich.App.1983), remanded on other grounds, 366 N.W.2d 7 (Mich.1983), on remand 382 N.W.2d 195 (Mich.1985), rev'd sub nom Canon v. Thumudo, 422 N.W.2d 688 (Mich.1988)). In Sellers, the Sixth Circuit held that a psychiatric hospital did not owe a duty to plaintiff as he was not a readily identifiable victim. Id. at 13.
 
 
 10
 The question of whether a third person was "readily identifiable" requires review of the evidence. Sellers, at 10; Davis, 335 N.W.2d at 489. On this record there is no reason to believe any of the defendants knew or should have known plaintiffs were in danger. Andrews married Jeann Ann after his escape. There is no explanation of why this marriage placed plaintiffs in a class of persons "readily identifiable as foreseeably endangered." Plaintiffs never alleged that Andrews had threatened plaintiffs specifically or that defendants knew of such threats.
 
 
 11
 There are cases where the victim need not be readily identifiable. The Sellers court recognized an exception to the "readily identifiable" rule in the case of physicians. Id.
 
 
 12
 In Duvall v. Goldin, 362 N.W.2d 275 (Mich.App 1984), the court found a duty existed even though plaintiff had not been "readily identifiable." The special relationship between the doctor and the patient was basis enough to impose a duty. We decline to extend the holding in such physician-patient cases to the instant case. In Duvall, the court emphasized that the physician's duty of care to third parties arose "out of the diagosis of disease or the prescription of medication which may impact or alter the patient's behavior and in turn endanger third parties." Id. at 278-79. The prison officials did nothing to impact or alter Andrews' behavior and thereby cause his actions. Plaintiffs, although allowed to amend their complaint twice, have not stated a claim upon which relief can be granted. See also Jackson v. New Center Community Mental Health Services, 404 N.W.2d 688, 693 (Mich.App.1987).
 
 
 13
 The District Court also held that the plaintiffs failed to allege any due process or equal protection violation which would provide a cause of action to plaintiffs. See Janan v. Trammell, 785 F.2d 557 (6th Cir.1986) (parole board's actions were causally remote from plaintiff's death).
 
 
 14
 The District Court at oral argument specifically referred to Bowers v. Devito, 686 F.2d 616 (7th Cir.1982). In Bowers, the court stated:
 
 
 15
 There is a constitutional right not to be murdered by a state officer, for the state violates the Fourteenth Amendment when its officer, acting under color of state law, deprives a person of life without due process of law ... But there is no constitutional right to be protected by the state against being murdered by criminals or madmen. It is monstrous if the state fails to protect its residents against such predators but it does not violate the due process clause of the Fourteenth Amendment or, we suppose, any other provision of the Constitution. The Constitution is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order. 686 F.2d at 618 (citation omitted).
 
 
 16
 The Supreme Court recently addressed this issue in DeShaney v. Winnebago County, 109 S.Ct. 998 (March 21, 1989).[1] The majority of the court stated that "nothing in the language of the Due Process Clause itself requires the State to protect the life liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimum levels of safety and security." Id. at 1003. The Court subsequently rejected the argument that because the State knew plaintiff faced a special danger of abuse by his father and had stated its intention to protect plaintiff from that danger that a "special relationship" existed and the state owed a duty to plaintiff. Id. at 1004. The Supreme Court stated "that in certain very limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." Id. at 1004-05. The Court, however, defined such circumstances as limited to cases "when the State takes a person into its custody and holds him there against his will." The State is then obligated to assume some responsibility for the person's well-being. Id. at 1005. As plaintiffs were never in custody of the State, the Constitution imposes no duty on the defendants.
 
 
 17
 We find no relevant facts to be in dispute and the District Judge's order of dismissal is affirmed.
 
 
 
 [1]
 There was a strong dissent by Justice Brennan in the DeShaney case. The author of this opinion, speaking only for himself, might well agree with the Supreme Court dissenters if free to do so