LAKESIDE OAKLAND DEVELOPMENT, LC v H & J BEEF COMPANY

Docket Nos. 226903, 228797. Submitted January 9, 2002, at Detroit. Decided February 1, 2002, at 9:10 A.M.

Lakeside Oakland Development, L.C., brought an action in the Oakland Circuit Court against H & J Beef Company, James W. Crawford, and Harry Eiferle, Jr., seeking to quiet title to land owned by Lakeside over which the defendants claimed an easement and alleging slander of title, breach of contract, and trespass. H & J then filed a third-party complaint against Thomas A. Duke Company and Mark W. Szerlag, the realtors who, as Lakeside's agents, handled the sale of land from Lakeside to the defendants. The defendants alleged that the sale included the easement in question over land retained by Lakeside. H & J sought indemnification from the realtors if Lakeside became entitled to any damages, and also sought damages for loss of the easement if Lakeside succeeded in having the easement declared void. The court, Jessica R. Cooper, J., granted Lakeside's motion for summary disposition on the basis of the statute of frauds and entered an order extinguishing the easement. H & J, Crawford, and Eiferle appealed. (Docket No. 226903). The court, on the basis that the realtors did not owe H & J a duty, granted the realtors' motion for summary disposition of the third-party complaint. The court awarded the realtors costs and attorney fees after finding that H & J filed a frivolous third-party complaint. H & J appealed from that order by leave granted. (Docket No. 228797). The appeals were consolidated.

The Court of Appeals *held*:

1. The order granting Lakeside's motion for summary disposition must be reversed and the matter must be remanded for further proceedings. The documents do not indicate a clear intent to create an easement, but genuine issues of material fact exist regarding whether Lakeside should be estopped from asserting the statute of frauds defense. On remand, a verdict must be entered in favor of Lakeside if the trier of fact finds that the doctrine of equitable estoppel is not applicable under the facts of this case. If equitable estoppel is found to be applicable, the trier of fact must determine whether the agreement of the parties included the transfer of an easement.

2. The court properly found that because the realtors were agents of the seller, the realtors had no duty to H & J with regard to which liability could arise. The court did not err in finding that the third-party complaint failed to state a cause of action for damages or indemnification. That part of the court's order must be affirmed.

3. The court clearly erred in awarding costs and attorney fees to the realtors as a sanction against H & J for filing a frivolous third-party complaint. There was arguable legal merit to the arguments advanced by H & J in attempting to hold the realtors liable for their actions. That part of the court's order must be reversed.

Affirmed in part, reversed in part, and remanded.

1. Statute of Frauds — Estoppel.

The statute of frauds is intended to prevent fraud or the opportunity for fraud, not to aid the commission of fraud or the prevention of justice; equitable estoppel may be applied to defeat the defense of the statute of frauds where a party has detrimentally relied on oral agreements or where the facts necessitate application of the doctrine of equitable estoppel; questions concerning estoppel should be presented to the trier of fact where factual issues exist regarding whether a party is estopped from raising the statute of frauds defense against a party who reasonably and justifiably relied on an oral agreement (MCL 566.106, 566.108).

2. Estoppel — Equity.

Equitable estoppel, although not an independent cause of action, may assist a party by precluding the opposing party from asserting or denying the existence of a particular fact; equitable estoppel may arise where a party, by representations, admissions, or silence, intentionally or negligently induces another party to believe facts and that party justifiably relies and acts on that belief and would be prejudiced if the first party is allowed to deny the existence of those facts.

3. Indemnity — Common-Law Indemnity.

A party whose primary complaint alleges active, rather than passive, liability may not seek common-law indemnification.

*Wasinger Kickham and Kohls* (by *Gregory D. Hanley*), for plaintiff Lakeside Oakland Development, L.C.

*James C. Dillard,* for third-party plaintiff H & J Beef Company.

*Samuel H. Gun* and *James C. Dillard*, for defendants H & J Beef Company, James C. Crawford, and Harry Eiferle, Jr.

*Wood, Kull, Herschfus, Lay & Kull, P.C.* (by *Brian H. Herschfus*), for third-party defendants Thomas A. Duke Company and Mark W. Szerlag.

Before: HOOD, P.J., and MURPHY and MARKEY, JJ.

MURPHY, J. The trial court granted summary disposition, pursuant to MCR 2.116(C)(10), in favor of plaintiff Lakeside Oakland Development, L.C., (seller) against defendants James W. Crawford and Harry Eiferle, Jr., and defendant/third-party plaintiff H & J Beef Company (buyers) in this real property action.[1] The trial court also granted a motion for summary disposition by third-party defendants Thomas A. Duke Company and Mark W. Szerlag (realtors), pursuant to MCR 2.116(C)(8) and (10), with regard to H & J's third-party complaint. The trial court further ordered H & J to pay $7,273 in costs and attorney fees to the realtors for filing a frivolous third-party complaint. The buyers appeal as of right in Docket No. 226903, and H & J appeals by leave granted in Docket No. 228797. The appeals were consolidated. We reverse the judgment granting the seller's motion for summary disposition in Docket No. 226903 and remand the matter to the trial court. We affirm the judgment granting the realtors' motion for summary disposition

---

[1] When discussing the general facts and the action brought by the seller, we shall refer to all the defendants as the buyers; however, when discussing the third-party complaint, we shall refer to only defendant H & J because defendants Crawford and Eiferle are not named as third-party plaintiffs in that complaint.

in Docket No. 228797; however, we reverse the order awarding costs and attorney fees to the realtors.

### I. UNDERLYING FACTS

The buyers operate various Arby's Restaurants, and in 1995, they negotiated for the purchase of land from the seller on which the buyers wished to construct an Arby's. The seller owned several parcels, and the buyers agreed to the purchase of a one-acre parcel for $275,000. An important aspect of the purchase, according to the buyers, was an easement from the parcel they were purchasing to a side street. This easement would allow customers alternate ingress or egress to and from the restaurant, as opposed to the busy thoroughfare on which the restaurant fronted.

A purchase agreement, executed in July 1995, provided that the seller would grant the buyers a permanent easement to the side street in a location on which the seller and the buyers mutually agreed. The buyers negotiated directly with the realtors, who were acting on behalf of the seller. The buyers claim that the easement was agreed on and that the location was identified in a survey map that was prepared by a surveyor hired by the realtors. A closing was scheduled for May 10, 1996. Before the closing, the realtors sent the buyers a packet of closing documents, including the survey map highlighting the easement. The seller had executed both a warranty deed with an attached legal description of the property on which the Arby's was to be built and a closing statement. However, there was no reference to an easement, or legal description of an easement, contained in the warranty deed or on the attached legal description of the parcel being sold. The warranty

deed indicated that the property to be conveyed was as described in the attached rider. The attached legal description of the parcel being sold referred to the warranty deed. There was no document providing that the seller was granting the buyers an easement over any specific area, and the survey map contained neither language to that effect nor the seller's signature.

The seller was not present at the scheduled closing, which was handled by the realtors, a title company, the buyers, and the buyers' realtor. The buyers inquired about the easement, and the title company insisted on a legal description of the easement before closing the sale. The realtors promised the buyers that there would be no problem, and that they would take care of the matter by obtaining the legal description of the easement. The warranty deed, other closing documents, and the buyers' payment were placed in escrow with the title company pending the realtors' submission of the easement description. On May 24, 1996, the parties closed in escrow when the realtors provided the title company with a legal description of the easement. The easement description, prepared for the realtors by their surveyor on the surveyor's letterhead, did not refer to the warranty deed or have the signature of the seller. The easement description contained no language indicating that the sellers were granting the described easement to the buyers. The buyers' payment was released from escrow to the seller. The title company recorded the warranty deed with the two attached legal descriptions (three pages consecutively recorded).

The buyers, believing that the sale of the land with the easement was now complete, started construction

of the Arby's. Well over a year after the legal documents were recorded, and after construction was under way, the seller advised the buyers that they were trespassing because the buyers had no easement rights. The seller claimed that the buyers surreptitiously attached the easement description to the warranty deed and that it never agreed to such an easement. The conflict allegedly arose when the seller was attempting to sell the remaining parcels, over which the purported easement existed, to another party. The realtors maintained that the seller did in fact approve the easement description and the conveyance of the easement. The seller denied the realtors' claim, and there is apparently no written authorization from the seller to the realtors to grant the easement.

## II. COMPLAINT AND THIRD-PARTY COMPLAINT

The seller filed suit to quiet title, also alleging slander of title, breach of contract, and trespass. The seller sought to have voided any recorded easement in order to clear the cloud on the title, and it sought money damages. The seller alleged that there was no writing to satisfy the statute of frauds for purposes of conveying an easement. H & J then filed a third-party complaint against the realtors. H & J sought indemnification if the seller became entitled to any damages, and it sought damages for loss of the easement if the seller succeeded in its action to have the easement voided. H & J maintained that it had done nothing wrong, and that the realtors should be held fully responsible. The realtors claimed that H & J had no cause of action because no duty was owed to H & J, only to the seller.

### III. TRIAL COURT'S RULINGS ON MOTIONS FOR SUMMARY DISPOSITION

The trial court agreed with the realtors concerning the lack of a duty, and it granted their motion for summary disposition and awarded them $7,273 in costs and attorney fees on the basis of the filing of a frivolous third-party complaint by H & J. The trial court subsequently granted the seller's motion for summary disposition on the basis of the statute of frauds, and the court entered an order extinguishing the recorded easement and declaring it void ab initio. The trial court, citing MCL 566.106, found that the buyers failed to produce either a sufficient written agreement establishing conveyance of an easement or a written agreement between the seller and the realtor showing that the realtors had authority to grant the purported easement. The seller's claim for damages was subsequently dismissed by the trial court in light of the fact that the easement was extinguished.

### IV. DOCKET NO. 226903—REVIEW OF JUDGMENT GRANTING THE SELLER'S MOTION FOR SUMMARY DISPOSITION

We first address the buyers' claim that the trial court erred in granting summary disposition pursuant to MCR 2.116(C)(10) in favor of the seller.[2] This Court

---

[2] MCR 2.116(C)(10) provides for summary disposition where there is no genuine issue regarding any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law. Our Supreme Court has ruled that a trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue with respect to any material fact, and the moving party is entitled to judgment as a matter of law. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). In addition, all affidavits, pleadings, depositions, admissions, and other documentary evidence filed in the action or submitted by the parties is viewed " 'in the light most

reviews de novo rulings on motions for summary disposition. *Van v Zahorik*, 460 Mich 320, 326; 597 NW2d 15 (1999). The buyers filed an affirmative defense based on estoppel, and they argue on appeal that the seller should be precluded from asserting the statute of frauds on the basis of the seller's conduct and representations. We hold that there are genuine issues of material fact regarding whether the seller is estopped from relying on the statute of frauds.

In Michigan, the sale of land is controlled by the statute of frauds. *Zurcher v Herveat*, 238 Mich App 267, 276; 605 NW2d 329 (1999). The statute of frauds, in regards to the sale of land, is comprised of MCL 566.106 and MCL 566.108. *Zurcher, supra* at 276-277. MCL 566.106 provides:

> No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

MCL 566.108 provides, in part:

> Every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing . . . .

---

favorable to the party opposing the motion.' " *Id.*, quoting *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

In *Forge v Smith*, 458 Mich 198, 205; 580 NW2d 876 (1998), our Supreme Court, addressing issues regarding an alleged easement and the statute of frauds, stated:

> An easement is an interest in land that is subject to the statute of frauds. In order to create an express easement, there must be language in the writing manifesting a clear intent to create a servitude. Any ambiguities are resolved in favor of use of the land free of easements.

We believe, as a matter of law, that the documents that exist in the present case do not manifest a clear intent of the seller to create the easement claimed by the buyers. The warranty deed does not mention the transfer of an easement. The warranty deed does refer to an attached rider as constituting the description of the property being transferred, and the legal description of the fee simple being transferred refers to the deed; however, the fee description does not mention an easement. The document containing the legal description of the easement does not refer to the warranty deed or the fee simple description, nor does it contain the seller's signature or any language indicating that the seller was transferring an easement to the buyers. The survey map contained no language granting an easement or a signature of the seller. Standing alone, the easement description is just that, an easement description.[3] Moreover, even if the

---

[3] The buyers argue that pursuant to *Chapdelaine v Sochocki*, 247 Mich App 167; 635 NW2d 339 (2001), the seller was required to honor the purchase agreement provisions regarding an easement despite the fact that the closing documents, including the warranty deed, did not specify the granting of an easement. However, *Chapdelaine* is distinguishable because there this Court found that the language in the counteroffer and purchase agreement was sufficiently clear to manifest the parties' intent with regard to the specifics regarding the easement, and that the language

documents manifested an intent to transfer an easement, the seller claims, and it appears to be undisputed, that it never provided realtors with written authority to grant the easement as required by MCL 566.106. Therefore, if the statute of frauds were applied in the present case, the seller would be entitled to judgment as a matter of law as determined by the trial court.

In *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 365; 320 NW2d 836 (1982), our Supreme Court recognized that legal doctrines, including estoppel and promissory estoppel, "have developed to avoid the arbitrary and unjust results required by an overly mechanistic application of the [statute of frauds]." The statute of frauds exists for the purpose of preventing fraud or the opportunity for fraud, and not as an instrumentality to be used in the aid of fraud or prevention of justice. *Farah v Nickola*, 352 Mich 513, 519; 90 NW2d 464 (1958). The doctrine of equitable estoppel has been applied to defeat the defense of the statute of frauds where a party has

---

was not too indefinite to enforce. *Id.* at 172, n 2. Here, the purchase agreement, in and of itself, is too indefinite to enforce because it does not provide for the specific location, dimensions, or any other feature of the easement, other than that it would run from the Arby's parcel to the side street. The purchase agreement left it to the parties to agree at a later date on the location of the easement. Only the easement description and the survey map contain sufficient information regarding the dimensions and placement of the easement, and, as noted above, those documents do not contain language of a grant or the seller's signature, nor is there any document that authorized the realtors to provide the buyers with the easement description and survey map as part of the sale. Moreover, the buyers executed a document at closing that acknowledged that all the contingencies in the purchase agreement had been satisfied. For purposes of clarity on remand, we are not ruling that the purchase agreement cannot be considered by the trier of fact when evaluating the totality of the circumstances in determining if the seller is equitably estopped from arguing the statute of frauds defense.

acted to his detriment in reliance on oral agreements or where application of the doctrine of equitable estoppel is necessitated by the facts. *Nygard v Nygard*, 156 Mich App 94, 100; 401 NW2d 323 (1986). Estoppel questions should be presented to the jury where factual issues exist regarding whether a party is estopped from raising the statute of frauds defense against a party who reasonably and justifiably relied on an oral agreement. *Jim-Bob, Inc v Mehling*, 178 Mich App 71, 88-89; 443 NW2d 451 (1989). Although the cited cases concern situations where a plaintiff has raised estoppel or fraud to counter a defense based on the statute of frauds, we see no reason not to apply the doctrine here, where plaintiff wielded the statute of frauds as a sword and not as a shield.

We next turn to a discussion of equitable estoppel and the doctrine's requirements in order to make a determination regarding whether the buyers presented sufficient evidence to create an issue of fact regarding whether the statute of frauds defense should be precluded. In *Conagra, Inc v Farmers State Bank*, 237 Mich App 109, 140-141; 602 NW2d 390 (1999), this Court, noting the general principles regarding the doctrine of equitable estoppel, stated:

> Equitable estoppel is not an independent cause of action, but instead a doctrine that may assist a party by precluding the opposing party from asserting or denying the existence of a particular fact. Equitable estoppel may arise where (1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts. [Citations omitted.]

In the context of the present case, considering the case law cited above regarding estoppel and the statute of frauds, we believe that the relevant inquiry is whether the seller is precluded from arguing the lack of a sufficient writing (statute of frauds), and that determination must be made by the trier of fact, taking into consideration whether (1) the seller's actions, representations, admissions, or silence intentionally or negligently induced the buyers to believe that an easement was being transferred and (2) whether the buyers justifiably relied and acted on that belief. With regard to whether the buyers would be prejudiced if the seller were allowed to invoke the statute of frauds, we have already determined that the statute of frauds would require a judgment in the seller's favor; therefore, prejudice is established as a matter of law. We conclude that the trier of fact must determine whether equitable estoppel bars the seller's reliance on the statute of frauds because sufficient evidence creating an issue of fact was submitted to the trial court.

The evidence presented to the court included a purchase agreement showing a sale price of $275,000 with a provision indicating that the parties intended to include as part of the transaction an easement over the seller's remaining property to the side street. The evidence also indicated that the realtors insisted that the seller, through its representations, fully agreed to the easement as described in the attachment to the warranty deed, and that the realtors carried out the seller's wishes through the realtors' communications with the buyers. Further, the evidence indicated that the seller took no steps on its claims until it appeared that the existence of an easement would negatively

affect the transfer of the property over which the easement was located. Finally, there was the easement description and the survey map highlighting an easement. Taking into consideration the totality of the factual circumstances, including the parties' representations, *Nygard, supra,* we believe an issue of fact exists regarding whether estoppel bars the seller's statute of frauds argument.

For purposes of direction to the trial court on remand, should this case go to trial, if the trier of fact determines that equitable estoppel is not applicable, thereby allowing the seller to assert the statute of frauds, a verdict must be entered in favor of the seller on the basis of our ruling above that the documents, as a matter of law, do not show a clear intent to create an easement in favor of the buyers and because there was no writing authorizing the realtors to transfer an easement. *Forge, supra* at 205, 208. However, if the trier of fact determines that equitable estoppel is applicable, thereby precluding the seller from asserting the statute of frauds, the trier of fact shall determine, considering all the admissible evidence, oral and written, whether the parties' agreement included transfer of the easement in question.

V. DOCKET NO. 228797—REVIEW OF JUDGMENT GRANTING THE
REALTORS' MOTION FOR SUMMARY DISPOSITION AND AWARDING
SANCTIONS TO THE REALTORS

We next address H & J's claims that the trial court erred in granting summary disposition in favor of the realtors pursuant to MCR 2.116(C)(8) and (10) and in awarding costs and attorney fees to the realtors as a sanction against H & J for filing a frivolous third-party complaint. Considering the argument of the realtors

below and the trial court's ruling, we believe it appropriate to review the court's decision as one based on MCR 2.116(C)(8).[4] As noted above, this Court reviews de novo rulings on motions for summary disposition. *Van, supra* at 326.

A review of the third-party complaint indicates that H & J made two separate claims. First, H & J asserted that if it lost the easement, the realtors should be liable for the value of the easement, which H & J valued at $50,000 a year. In essence, H & J was claiming that the realtors breached a duty to correctly handle the real estate transaction.[5] In *Andrie v Chrystal-Anderson & Associates Realtors, Inc*, 187 Mich App 333, 337; 466 NW2d 393 (1991), this Court stated:

> In negotiating a real estate sale, any relationship between the seller's agent and the potential buyer is a commercially antagonistic one, with each side working for his best advantage and not for the benefit of the other. We therefore conclude that a seller's real estate broker or agent owes no duty to a potential buyer to properly convey a purchase offer to the seller.

We agree with the trial court that because the realtors were agents of the seller, the realtors had no duty to H & J based on the allegations in the third-party complaint; therefore, no liability could arise.

---

[4] MCR 2.116(C)(8) provides for summary disposition of a claim on the ground that the opposing party has failed to state a claim on which relief can be granted. A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. *Simko v Blake*, 448 Mich 648, 654; 532 NW2d 842 (1995). All factual allegations in support of the claim, and any reasonable inferences or conclusions that can be drawn from the facts, are accepted as true. *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998).

[5] We note, with some significance, that H & J did not allege fraud or misrepresentation against the realtors.

The second claim made by H & J in the third-party complaint, one requesting indemnification for any damages recovered by the seller against H & J, was premised on the realtors being completely at fault for any cloud on the title. H & J does not specify the legal basis for seeking indemnification. However, with regard to this particular claim, it appears that H & J is arguing a right to common-law indemnification without any reliance on a particular duty owed by the realtors to H & J. This Court has noted that the right to common-law indemnification is based on the equitable theory that where the wrongful act of one party results in another party's being held liable, the latter party is entitled to restitution for any losses. *North Community Healthcare, Inc v Telford*, 219 Mich App 225, 227; 556 NW2d 180 (1996). However, a party may not seek common-law indemnity where the primary complaint alleges active, rather than passive, liability. *Williams v Litton Systems, Inc*, 164 Mich App 195, 198-199; 416 NW2d 704 (1987), aff'd 433 Mich 755; 449 NW2d 669 (1989). Here, the seller's complaint against H & J is premised on active liability. Accordingly, albeit for different reasons, the trial court did not err in granting the realtors' motion for summary disposition of H & J's indemnification claim, because H & J's third-party complaint failed to state a cause of action for damages or indemnification.[6] MCR 2.116(C)(8).

The buyers also challenge the trial court's award of costs and attorney fees to the realtors as sanctions under MCR 2.625(A)(2), which incorporates by refer-

---

[6] This Court will not reverse a trial court's order if it reached the right result for the wrong reason. *Etefia v Credit Technologies, Inc*, 245 Mich App 466, 470; 628 NW2d 577 (2001).

ence MCL 600.2591, allowing the award of sanctions "if the court finds on motion of a party that an action or defense was frivolous . . . ." MCL 600.2591(3)(a)(iii) provides that an action is frivolous where "[t]he party's legal position was devoid of arguable legal merit." We review this award of sanctions based on a frivolous complaint under a clearly erroneous standard. *Phinisee v Rogers*, 229 Mich App 547, 561; 582 NW2d 852 (1998). We reverse the trial court's award of costs and attorney fees because the court's award was clearly erroneous. Considering H & J's reliance on the realtors' statements and actions that indicated that an easement was being transferred, and the fact that H & J dealt almost exclusively with the realtors during the entirety of the transaction, we cannot deem H & J's attempt to hold the realtors liable for their actions as being devoid of arguable legal merit, and even the trial court incorrectly applied the "duty" analysis to H & J's indemnification claim. Moreover, the law does provide, in certain circumstances, that a realtor may be liable to a party it does not represent in a real estate transaction. *M&D, Inc v McConkey*, 231 Mich App 22, 35; 585 NW2d 33 (1998) (special conflict resolution panel incorporating language from the Court's prior vacated opinion, *M&D, Inc v McConkey*, 226 Mich App 801, 813; 573 NW2d 281 [1997]). For the same reasons, we decline the realtors' request to sanction H & J for filing this appeal.

### VI. CONCLUSION

We hold that the trial court erred in granting the seller's motion for summary disposition in Docket No. 226903, and we reverse and remand for proceedings consistent with this opinion. Additionally, we hold

that the trial court did not err in granting the realtors' motion for summary disposition in Docket No. 228797; however, the court did err in awarding costs and attorney fees to the realtors as a sanction against H & J for the filing of a frivolous third-party complaint. Finally, we decline to sanction H & J for filing this appeal.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.